{ *Meffrs. Dana & Gridley, for Banifter.* }
{ *Meffrs. Auchmuty & Otis, (1) for Henderfon.* }

*Special Verdict.*

THOMAS BANISTER, Grandfather of the prefent Demandant, made his Will the 25 January, Anno 1708-9, and after divers Legacies follows:

"*Item*, after my juft Debts and Funeral Charges "are paid, I give all my Houfes, Warehoufes, "Lands, Mortgages, Bills, Bonds, Money, Plate, "Debts, Wares, Merchandizes, both at Sea and "Land, as alfo all Books, Bedding, Houfehold "Stuff, Horfes, Cattle, and all that of Right any "Ways belongs and appertains to me, whether "named or not named, to my three Sons, Thomas, "Samuel and John, to be equally divided among "them in three equal Shares or Proportions, after "my

---

(1) James Otis's will, made many years after, during the unfortunate condition of mental derangement in which his life ended, commences as follows: "In the name of God, Amen. — I, James Otis, being in no manner of fear of Death, though called by fome the King of Terrors, and by old Bannifter in his will, a ferjeant — " Tudor's Life of Otis, p. 483. And in the will of Thomas Banifter, the teftator in this cafe, of which a copy is on file, appears the following: — " When Thou Jehovah fhall fend Thy inexorable ferjeant Death to arreft this body, and carry it to that dark prifon of the grave," &c.

—— " Had I but time, (as this fell ferjeant, Death
        Is ftrict in his arreft,)"
                HAMLET, Act V., Sc. 2.

BANISTER
*v.*
HENDERSON.

Rec. 1766.
Fol. 80.

Cohabitation and univerfal Report are fufficient Evidence of a Marriage to eftablish the Legitimacy of the Demandant in a Real Action.

Devife as follows: "I give all my Houfes, Warehoufes, Lands, Mortgages, Money, Merchandife," &c. &c. "and all that of Right any Ways belongs and appertains to me," "to my three Sons, T., S., and J., to be equally divided among them in three equal Shares or Proportions, after my Debts, Legacies, and Funeral Expenfes are paid; and if either of my three Sons die without Heirs lawfully begotten

in Wedlock,
I will their
Share or Pro-
portion to the
furviving
Sons or Son
and their
Heirs for-
ever." Alfo
a Legacy of
£500 previ-
oufly given to
a Daughter
was in a cer-
tain Event
" to be paid
to my three
Sons or their
Heirs, to be
equally di-
vided among
them as I
have willed
the reft of my
Eftate to be
divided
among them
or the
Survivors of
them." *Held*,
that the
Brothers took
an equal Ten-
ancy in Com-
mon in Fee
in the Real
Eftate, de-
terminable on
either's dying
without Iffue
in the Life of
fome other
Son, and an
executory
Devife over
of fuch De-
ceafed's
Share to the
Survivor or

"my Debts, Legacies and Funeral Charges are paid,
" *and if either of my three Sons die without Heirs*
" *lawfully begotten in Wedlock, I will their Share .or*
" *Proportion to the surviving Sons or Son and their*
" *Heirs forever.* And the Reafon why I make my
" eldeft Son Thomas but *equal* with his Brothers
" Samuel and John, is for thefe Reafons; firft, he
" hath had a confiderable Share already, Secondly,
" I have given his Son £500 if the Lord fpare his
" Life — I need add no more Reafons, but this —
" they are all equally dear to me."

Afterwards: " I will to my beloved Wife Sarah
" Banifter, said Pew for her Life, to order who fhall
" fit with her in it, and untill my Grandfon Thomas
" Banifter is of Age of twenty-one Years, if he liv-
" eth to have *Male Heirs*, I give it to him and *to*
" *his Male Heirs lawfully begotten in Wedlock forever*,
" both Proprietorfhip and Pew, but if he dieth
" without *Male Heirs*, I give it *to the next Male*
" *Heirs, and to defcend to the next Male Heirs, with-*
" *out any Alienation forever.*" (2)

In

---

(2) The fpecial verdict further found that the three brothers entered
under the provifions of the will aforefaid, that Samuel and John (who
foon after died without iffue) made a letter of attorney to Thomas, who
conveyed the premifes to Giles Dyer, who reconveyed to Thomas, who
conveyed again to Dyer one moiety of the premifes. Thomas died,
leaving the demandant his fon and other children. Dyer then made a
deed of the whole of the premifes to Samuel, who afterwards, together
with Frances, the widow of Thomas and mother of demandant, con-
veyed the premifes to Peter Luce, who conveyed to John Henderfon,
father of the tenant, after which Samuel died without iffue. If the de-
mandant was entitled to recover, the jury found for him poffeffion of the
whole, or one moiety, or any leffer part to which the Court decided
that he was entitled. " But if he be intitled to no part thereof," then
for

In settling the special Verdict, there were three Points the Parties could not agree on. One was, whether the present Demandant was legitimate; or, in other Words, whether Thomas and Frances Banister, Father and Mother of the Demandant, were legally married.

Thomas and Frances Banister came over from England, and lived as Man and Wife, both in Old and New England.

*Mr. Auchmuty, again the Legitimacy of the Demandant.* Had it been personal Estate, no Doubt common Report might have done to prove the Marriage, but here is a great Real Estate to be determined — shall common Fame be relied on in this Case? (3) No Certificate of the Marriage, the highest, the only legal Evidence. Had it been in a new Country where Records are not kept, there might have been some faint Colour for not producing a Certificate, but in England these Records are most strictly kept; for they know it is the only Evidence that will serve; the only Proof of the Legality of Marriage.

*Mr.*

---

1765.

BANISTER
*v.*
HENDERSON.

Survivors. *Hutchinson, C. J., & Oliver, J., diff.*
If an Estate Tail with Cross Remainders, whether Conveyances by the Brothers with Collateral Warranty would not bind the Issue, *quære?* Under the Province Charter no Appeal lies to the King in Council, in a Real Action.

---

for the tenant costs. That part of the case between the statement of the devise and Mr. Dana's argument is reported in the MS. as of the previous term, after the case, *Rex* v. *Pourkfdorff.* For convenience the case is printed as a whole.

(3) See *Means* v. *Welles,* 12 Met. 361, *Hubbard,* J.—" It was argued that mere cohabitation was not a species of evidence sufficient to sustain a writ of right. But we are aware of no distinction as to the amount of proof necessary to establish a marriage in any one case more than another, where marriage is a fact to be proved in order to sustain an action."

*Mr. Gridley.* In Strictnefs of Law they ought to produce a Copy, and not a Certificate, though generally allowed. It has been faid that a Certificate is the higheft Evidence; but I fay the Perfons prefent at the Marriage is Evidence higher in its Nature — for how will that ever prove the Identity of the Perfons? Cohabitation and univerfal Report have always been deemed fufficient Evidence, and I never in the Courfe of my Practice heard it denied before.

*Ch. Juft.* Have you no Authorities, Gentlemen?

*Mr. Gridley.* There is no Authority that the Sun fhines.

*Auchmuty.* But there is Evidence.

*Ch. Juft.* How do Quakers ever prove Marriage except by Report?

*Mr. Auchmuty* answered, Favour was fhown them.

*Mr. Gridley.* There fhall be no baftardizing Iffue after Death, is a Maxim of the Law.

*Auchmuty.* A Baftard can't be Heir till Death, and after Death Baftardy can't be proved.*

*Juft. Ruffell* only inftanced in Quakers.

*Juft. Lynde.* I can't think a Certificate alone is Evidence, or the beft — that is greater which Mr.
                                        Gridley

* *Qu.* if Cases in Time of Holt, 287, would not have been pertinent.

Gridley mentioned. Perſons preſent at the Marriage can only prove the identical Perſons. (4) Univerſal Report is, in my Opinion, ſufficient Evidence, corroborated with other Circumſtances, of the Marriage.

*Ch. Juſt.* From Thomas and Frances Baniſter living in Old and New England as Man and Wife, I think it may well be inferred they were ſo. (5) I am ſorry for Want of Authorities, and that this Point was not left to the Court as well as the Reſt; for it is not properly a Matter of Fact.

The ſecond Point (Matter of a Perſon's Death) was proved to Satisfaction.

The third, whether there was an actual Entry into the demanded Premiſes was given (in Effect) up; for a Deviſe veſts the Eſtate immediately in the Donee; it does not mean an actual Seizin in Law, but Right to Seizin.

The Jury found the two Points in Favour of the Demandant.

**N. B.** The next morning *Ch. Juſt.* produced the following Authority from Burn's Eccleſiaſt. Law, vol. 2d, p. 36. (6) Tit. Marriage: " The Proof
" of

---

(4) S. P. *Commonwealth* v. *Norcrofs*, 9 Maſs. 492. *Ellis* v. *Ellis*, 11 Maſs. 92.

(5) S. P. *Newburyport* v. *Boothbay*, 9 Maſs. 414. *Means* v. *Welles*, 12 Met. 361. *Aliter* in criminal proceedings before St. 1841, c. 20. *Commonwealth* v. *Littlejohn*, 15 Maſs. 163.

(6) Burn's Eccl. Law, Marriage, X. 5.

"of Marriage may be by Witneffes who were pref-
"ent at the Solemnization; by Cohabitation of the
"Parties; by publick Fame and Report; by Con-
"feffion of the married Perfons themfelves, although
"their Acknowledgment might be only to avoid the
"Punifhment of Fornication, and by divers other
"Circumftances which, if they amount to a half
"Proof, ought to be extended in Favour of Marri-
"age, rather than contrary to it. Wood, Civ. Law,
"122."

*Mr. Dana.* The Demandant Banifter demands
by Force of the Will before me; his Pedigree is
fet forth in the fpecial Verdict. I need not obferve
that the Intent of Teftator is to be the fole Director
for Conftruction of the Words, unlefs a new Eftate
is created contrary to Law. Now from the whole
Tenor of the Will the Teftator's fole Aim appears
to be the keeping his Eftate in his Family; and
this Intention of his is the general Key to the
Underftanding the Will, and, if attended to, will
fhow in the cleareft Manner he defigned an Ef-
tate Tail. He gives his Eftate "*to his three Sons
Thomas, Samuel and John, and if either of my three
Sons &c., to the furviving* SONS OR SON;" Samuel,
(I can't imagine how he came to take it in his
Head) fuppofing he had a Fee, conveys away this
Eftate; but if this is an Eftate Tail, it wipes away
all Conveyances whatfoever; for Eftates Tail are
inalienable, except by Fine and Recovery, and that
reduces it to Fee Simple.

I am fenfible when a Man gives all his Eftate
without any otherwife expreffing his Intent, a Fee
paffes.

paſſes.* 1 Salk. 239, *Hopewell* vs. *Ackland.* If the Teſtator had ſaid no more than "I give all my Houſes," &c., they would have had a Fee; but his Intent through the whole Will being not only to take Care of his Sons, but their Poſterity — and though he gives all "*to his three Sons Thomas, Samuel and John, to be equally divided among them, in three equal Shares or Proportions,*" yet he afterwards explains himſelf — "*If either die without Heirs,*" and he then explains *what Heirs,* "*Heirs lawfully begotten in Wedlock,*" then goes on — "*I will their Share or Proportion to the ſurviving Sons or* SON;" and though the Words following, "*their Heirs forever,*" are not aptly expreſſed, yet they ſhall not vitiate, for his Meaning is evident from all the Words taken together, and his Intent ſhall take Effect.† Cites 1 Salk. 226, 227, *Bliſſet* vs. *Cranwell,* and 2 Vent. 285.

As to his willing "all to his three Sons to be equally divided among them," there are numberleſs Authorities where the firſt Words give a Fee, by giving Lands to a Man and his Heirs forever, yet the after Words, explaining what Heirs he meant, make it a Tail. *Nottingham* vs. *Jennings,* 1 Salk. 233, as in our Caſe. *Soulle* vs. *Gerrard,* 1 Cro. 525. The after Expreſſions ſhew he meant Heirs lawfully begotten in Wedlock, and created a Tail: So in the Caſe laſt cited, the firſt Words ſhall be ſet aſide, becauſe contrary to his Intent. But full to

---

* Vide 3 Mod. 45, *Reeves* v. *Winnington.*

† *Qu.* whether 8 Rep. 95 b, would not have been a good Authority to this Point.

1765.

BANISTER
v.
HENDERSON.

to our Point is the Cafe of *Chadock* vs. *Cowley*, 2 Cro. 695.   Here —

*Mr. Otis.*   Are you not fenfible, Sir, Lord Holt denies that Cafe to be Law? *

*Mr. Dana.*   No: But if he does, he is not infallible: But the Authorities mentioned are fufficient. Cites 3 Lev. 70, *Parker* vs. *Thacker*, and 2 Cro. 415, *Webb* vs. *Hearing* — a Cafe in Point.   It appears by all thefe Authorities, *una voce*, that Devifors' Intent fhall govern, the Intent fhall be collected from all the Words together; and though the fame Words give a Fee, yet if other Words explain what Heirs he means, viz.ᵗ "Heirs of the Body," or "*Heirs lawfully begotten in Wedlock*," it fhall make a Tail; and in our Cafe it is a Tail with a Limitation over to "*either of the Sons or* SON," which the Law calls Crofs Remainders.   The Intent of our Grandfather was fo fixed to keep his Eftate in his Family, and to make a Tail, that he extends it even to Perfonal Eftate, in which he is "againft the Rules of Law," therefore we don't demand it; † but his Intent in this is ftrongly marked.   "*To the furviving Sons or* SON."   The Iffue take, as much as if their Father had furvived.

Authorities to fupport the Crofs Remainders.
T. Jones,

---

* *Qu.* if Mr. Otis was not miftaken, and that he blended it with the Cafe of *Hearn* v. *Allen*, 3 Croke, 57, which Ld. Holt feems to doubt of in the Cafe of *Nottingham* v. *Jennings*, 1 Ld. Raym. 570? and *qu.* if that Doubt of Lord Holt does not make againft Mr. Otis?

† *Qu.* if the Cafe *Nottingham* vs. *Jennings*, 1 Ld. Raym. 570, would not be in Favour of the Demandant.

T. Jones, 172, *Holmes* vs. *Meynel.* Thomas Raymond, 452. This laft Cafe is full in Point. "As for Authorities, you cannot expect many in a Will; every Will ftands upon its own Legs." Pollexfen, 425. (This Cafe enlarged upon, therefore look into it more efpecially.) Crofs Remainders may be by Implication. Dyer, 303, Tit. Devife. T. Jones, 172.

*Ch. Juft.* But it muft be exprefs Implication. Is this fo?

*Dana.* Yes. Vid. Dyer, 303. (This Authority much relied on.)

*Gridley.* Dyer, Saunders, &c.; four of them of the fame Opinion, that Crofs Remainders may be between three. 1 Vent. 224, *Cole* vs. *Levingfton.* By the whole Current of the Authorities, Crofs Remainders may be between three; our Cafe is much clearer than is common in thefe Cafes "*To the furviving Sons or* SON."

*Ch. Juft.* "*And their Heirs forever.*"

*Dana.* I take it fo: And he has fhown what Heirs he meant; "*Heirs lawfully begotten in Wedlock.* The Expreffion "*If either die*," is an Anfwer to your Honour.

*Ch. Juft.* Did the Teftator intend a Tail to all of his Sons?

*Gridley.*

*Gridley.* They took Tails with Crofs Remainders over.

*Dana.* On the Whole, the Teftator's fole Intent plainly appears to intail his Eftate; his Words aptly enough exprefs his Intent; and, as it is confiftent with the Rules of Law, it is the Bufinefs of the Law to fulfill that Intent.

*Mr. Auchmuty.* This is a Cafe of great Expectation and great Importance. We differ very much and very materially. In order to elucidate any Point in a Will, the other Parts connected with and referred to it muft all be confidered. Mr. Dana fays the Conveyances will not hurt, but will all be "wiped away" if this is an Eftate Tail: I fay not.

*Ch. Juft.* What do you fuppofe can bar an Eftate Tail?

*Auchmuty.* Conveyances with collateral Warranty.

*Gridley.* Abolifhed long ago by Act of Parliament.

*Auchmuty.* But firft to the Tail. He has expreffly given Money to go over as the other Eftate: " *My Will is that faid Legacy of £500 be equally* " *divided among my three Sons, Thomas, Samuel and* " *John, with the Reft of my Eftate as hereafter is men-* " *tioned.*" And afterwards, if certain Things happen, " *then I will the laft mentioned Sum of £500* " *fhall*

"*shall at her Death be paid back again to my 3 Sons* "*or their Heirs, to be equally divided among them, as I* "*have willed the Rest of my Estate to be divided among* "*them or the Survivors of them.*" Can his Intent * be supposed a Tail, when he devises Monies to go as his other Estate? He very expressly intails his Pew, very trifling in its Nature, in the strongest Terms, which shews he was not ignorant of apt Words to make a Tail.

But to the Doctrine of Implication which the Gentlemen insist on. The Expressions to make a Tail must be strong and coercive. 2 Bac. 66. "No "Words shall be construed to make a Tail without "*plain* Implication." The Courts will never extend Implications, against Estates Fee, the noblest Estates, to Fee Tail, Estates of a much baser Nature. *Wild's Case*, 6 Coke, 16 b. To make Estates Tail "the "Intent ought to be manifest and certain, not ob- "scure and doubtfull." In the same Case: "The In- "tent, and not the Words only of the Devisor, ought "to make it an Estate Tail, then this Intent ought "to be manifest and certain, and so expressed in the "Will;" and in our Case, as in *Wild's*, no such In- tent appears. They have cited no Authorities, but where the Implication has been so strong that there was no avoiding the Construction. Cro. Car. 368, *Spirt* vs. *Bence.* In this Case, where the Intent is not very clear, the Court will not construe against the Common Law. I remember in Croke, Walmf- ley said, Implication must be very strong to disinherit other

* *Qu.* Might not this be Evidence of his strong Intent, as Mr. Dana hinted?

1765.

BANISTER
*v.*
HENDERSON.

other Children, and to carry the Intent againſt the Rules of Deſcent. It is ſaid alſo in 3d Mod., the Court will not puzzle themſelves about the Intent of a Man who was perhaps ſick and confuſed in his Senſes at the Time of making the Will, but let it deſcend according to Law. 3 Mod. 104, *Hanchet* vs. *Thelwal.* — " No Reaſon can be given why this Court " ſhould not conſtrue Wills according to the Rules " of the Common Law, where an Eſtate by Implica- " tion is ſo uncertain; for when Men are ſick, yet " have a diſpoſing Power left, they uſually write " Nonſenſe, and the Judges muſt rack their Brains " to find out what is intended."

You are ſenſible when there are pecuniary Lega- cies to pay, *prima facie* a Fee. What an Eſtate ſoever they took, they had it charged with " *Funeral Charges, Debts and Legacies,*" &c., many of which were very large. Theſe and many other Things to be paid, no Perſonal Eſtate appears to be left where- with to diſcharge them — none found in the Verdict; thus by Reaſon of theſe Charges, it converts the Eſ- tate into a Fee. 1 Lilly, 451, 2. To the ſame Point is 3 Rep. 21, *Boraſton's Caſe.*

*Ch. Juſtice.* The Books vary in that Point.

*Auchmuty.* Where there is a Sum in Groſs, that creates a Fee, but where a Sum is to be paid out of the Annual Profits, that do'n't alter; that I take to be the Rule.* Your Honours remember the Caſe

---

* *Qu.* if any Eſtate but an *Eſtate for Life* can be enlarged by *any Charge.* For it is Law that " no Eſtate ſhall paſs by Implication of Law

Cafe *Elwell & Pierfon*, (7) and the Cafe of *Dudley* vs. *Dudley*. (8) This Point (of Charge) had great Weight, and juftly, in thofe Cafes.

The Words on which the Crofs Remainders are founded are Fee Simple; for it is, in Cafe of Death and no Iffue, to the Survivor and "their Heirs forever." Had Banifter the Grandfather intended a Tail, would he have ufed thefe Words,—efpecially when he fo well knew the Words of Tail, as in the Cafe of the Pew?

*Ch. Juft.* "Heirs lawfully begotten in Wedlock" — is that Tail or Fee?

*Auchmuty.* A Fee; for if a Man will depart from the Rules of Law, his Eftate fhall go according to the Rules of Defcent. But if there is any Doubt in this Cafe, it is at End: It is clearly then with us, both by the Principles of Law and Equity. 1 Lilly, 454. No Intent fhall go againft the exprefs Words of the Devifor; at this Rate from a Paffage or two inadvertently written, fhall go againft the general Tenor and plain Words of a Will. 2 Bac. 68. To conftrue the Intent againft the Words is directly againft all the Books. The Courts have always detefted Crofs Remainders among more than two;

I

Law againft the *exprefs Limitation* of the Party, altho' the Limitation is void." 2 Rep. 55 b, and fo adjudged in the Cafe of *Hog* vs. *Croffe*, Cro. Eliz. 254. *Ideo* —

*Qu.* whether the Cafe of *Elwell* (cited above) was not adjudged againft Law.

---

(7) *Ante*, p. 42.          (8) *Ante*, p. 12.

I would obferve upon Raym'd that the Cafes are different.   In order to induce the Court to thefe Crofs Remainders, Mr. Dana has obferved that the Devifor's whole Intention was to keep his Eftate in the Family.   This is Implication upon Implication which no Lawyer ever heard of.   This Intent is got by Implication, and Crofs Remainders are built on that Implication : But the moft natural Implication is, that he never intended a Tail at all.   According to thefe Gentlemen's Way, you may add Implication on Implication *in Infinitum*, and we fhall have no fettled Rules of Law to go by.   In all their Authorities, the Devife was only to two, with Crofs Remainders over, but the Cafe they would extend it to, is among three ; and the Reafon is given——it is to avoid Confufion by fplitting Eftates into a thoufand Parts, and to keep Peace among Men, from difputing about fo many confufed Crofs Remainders: Befides, the Remainders cited in the Books are not founded upon Implication, but upon Certainty.   Mr. Dana has faid, there may be Words which import a Fee, changed into a Tail by after Words.   Agreed ; but no fuch Words here——nay, the after Words are, " their Heirs forever," a plain Fee.   They can't produce a fingle Authority where the firft Words controul the laft; here the laft Words are Fee.   If any Parts clafh, I can't help that ; if a Teftator will devife in fuch a Manner that there is no telling what Eftate paffes, it muft pafs according to Law. " Where *a certain Intent* may be collected, it fhall be " conftrued according to that Intent, but where it is " uncertain, it is void.   The Intent of the Devifor " muft be collected upon *plain* Words, and not " upon Words which engender Confufion."   And
                                        Walmfley

Walmfley faid, " It is a good Way when the Words " in a Will are ambiguous, fo as the Intent may not " be collected, to expound the Will according to " the Law." Cro. Eliz. 742, *Taylor & Ux.* vs. *Sayer.* Is not the Intent here, at beft, uncertain? Are the Devifor's Words plain? Don't his Words engender Confufion? Therefore by the laft and the other Authorities, the Intent void, and the Rules of Defcent muft be obferved.

The laft Thing I fhall mention, having already faid enough, is the feveral Deeds from Samuel, John and Frances, the Warrantys of which are collateral, and therefore bind the Iffue. Lit. §§ 709, 716, 717, with Coke's Commentary read at large. 1 Inft. 373 a, 375 b. 376 a. It is true there is a Statute about Warranties, but unlefs they produce, I fhall not anfwer it.

Upon the Whole, Eftates Tail are never implied except when the Intent is obvious — never have been, at Home or here. The Courts are very cautious how they give the Conftruction of Tail to Words in a Will, efpecially fuch Words as thefe; and I believe never known to extend them to create Crofs Remainders among three. I fhall not recapitulate my Arguments, but only obferve that it will caufe the utmoft Confufion thus to ejeft People out of Lands they have for fo many years quietly enjoyed; and now to turn them out upon fo ftrained a Conftruction of Words inadvertently dropped in a Man's laft Illnefs, would be as much againft Juftice and Equity, as Law and Common Senfe.

*Mr.*

*Mr. Otis.* The prefent Queftion arifes on this Claufe of Mr. Banifter's Will: "*After my juft Debts,*" &c. In the Courfe of my Argument I fhall examine what Eftate the Brothers took, whether Tail or Fee. 2dly. If a Tail, whether with Crofs Remainders over. 3dly. If Remainders over, whether the Remainders were in Tail or in Fee. 4thly. If a Tail with Crofs Remainders in Tail, whether the Collateral Warranty will not bind the Iffue.

The Terms Fee Simple, Tail, general and fpecial, Crofs Remainders, Executory Devife are well known, but yet as this Cafe depends pretty much on having clear and precife Ideas of them, your Honours will pardon me, if to refrefh our Memories, I juft run over the feveral Definitions.

(Mr. O. then gave the feveral Definitions of the above Terms, chiefly from Black. Anal. q^d vid.)

Crofs Remainders, as commonly fpoken of, mean implied Remainders. I will for the prefent allow a Tail, their Whole depending on their fhewing implied Crofs Remainders rationally and legally implied. Hobart, 29, 34, *Counden* vs. *Clerke.* Though the Intent of y^e Devifor is juftly called the Pole-Star of the Will, yet this is not the only Director; for this I cite the laft Cafe. There are a Variety of Opinions on this Point, and that too among the moft eminent Judges; fome. paying an unlimited Obedience to the Teftator's Intention, and others as much flighting it. The true Medium, I take it, is laid down in this Cafe; " the
" Devife

1765.

BANISTER
*v.*
HENDERSON.

" Devife muft be taken according to the Intent of " the Party Devifor," yet " fuch Intent muft be fo " expreff'd in the Will, that it may be *certain* to " the *Court*, and *not againft Law*." Hobart, 32. All the Vagaries of a difeafed Mind are not to be attended to; yet the rational and legal Intent of a Teftator fhould be obferv'd.

(Relative to the Crofs Remainders, Mr. O. cited the following Authorities:) Viner, Tit. Remainder; the whole of this Chap. Here " Crofs Re- " mainders fhall not rife between 3, unlefs the " Words do very plainly exprefs the Intent of " the Devifor to be fo; " " between 3 the Law " will not endure Crofs Remainders, by Reafon of " the Confufion which will enfue." " Two Crofs " Remainders may well ftand together, but *three* " *cannot well ftand together*; for that would make " fuch Confufion as the Law abhors, and that was " the Reafon of the Judgment in the Cafe of *Gilbert* " vs. *Witty*,* which *Pemberton, Ch. Juft.* faid he took " to be found Law. 2 Show. 139, *Holmes* vs. *Meynill*." And per *Holt, Ch. J.* — " a Crofs Remainder is an " awkward Sort of a Thing; the Cafe of *Holmes* vs. " *Meynill* † has prevail'd, and is not fit to be ftirr'd " now; " " and *Powell, J.* faid that the Cafe never " went down with him, though affirmed on a Writ " of Error, and he has heard learned People fpeak " againft it "— (And goes on, and finifhes the Chapter, and reads the whole of the Cafes cited above by Viner and others.) Viner, Tit. Rem. M. p. 1, 2. Ibid. Tit. Devife L. p. 1–6. 10 Rep. *Seymour's Cafe*, 1 Inft. 1 b, (Fee Sim.)

From

* 2 Croke, 655.                    † 2 Show. 136.

From all thefe Authorities there may be fuch a Conftruction as is confiftent with the Rules of Law, if it be conftrued a Devife in Fee with an Executory Devife over. Thefe Authorities are againft them directly: "3 Crofs Remainders cannot well ftand together." "Between 3 the Law will not endure Crofs Remainders," and why? " 'Twould make fuch Confufion as the Law abhors : " they are never favour'd in Law — Holt much againft them; they are never rais'd by Implication; "Crofs Remainders will not arife to more than 2 by Implication." Viner, Tit. Rem. X. p. 4, Notes, cites 8 Mod.\* 260, *Shaw* vs. *Weigh ;* T. Raym'd, 455, *Holmes* vs. *Meynill.* Befides from the plain Words, the whole Contexture and Tenor of this Will, 'tis plain he intended an Executory Devife over of the Deceafed's Share to $y^e$ Survivors or Survivor; certain he never intended a Tail with Crofs Remainders over, — yet if there is the leaft Doubt, the Cafe is with us. But which is likelieft to get into the Head of a mere Layman — thofe Crofs Remainders, which thefe Gentlemen contend for, which, after they have got beyond two, have puzzled the wifeft Heads in Europe, or that of an Executory Devife over, on a Fee determinable on either of his 3 Sons dying without Iffue ?

*Mr. Gridley.* Do you think the Teftator had a clearer Idea of an Executory Devife than Crofs Remainders ?

*Mr. Otis.* Though there may be fome Niceties in the Difference between Executory Devifes and
other

---

\* *Alias*, Cafes in Law and Equity.

other Devises, yet the general Idea is much more
likely to enter into a Layman's Head, than that of
Crofs Remainders.

'Tis manifeft from the Words of the Will he intended Equality among his Children. " *The Rea-* " *fon why I make my Eldeft Son but* EQUAL *with his* " *other Brothers,"* — " *They are all* EQUALLY *dear to me :*" Would what thefe Gentlemen contend for be confiftent with this intended Equality? Would not ours? An equal Tenancy in Common being, as we fay, devifed in Fee, determinable on either dying without Iffue in the Life of fome other Son, and then an Executory Devife over of fuch deceafed's Share to the Survivor or Survivors.

The Words in the Will do not make an Eftate Tail. *Hanchet* vs. *Thelwal,* 3 Mod. 105, 6.

In Order to make this Will agree with their Scheme, they are obliged to have Recourfe to double Implications; firft an Eftate Tail is to be implied and then Crofs Remainders. " An Eftate " by Implication was never thought of in a Deed, " nor in a Will, but in Cafes of Neceffity." Cafes in the Time of L'd Talbot, 3, *Glenorcky* v. *Bofville.* One would think this Rule would be fufficient to put an End to their Claim. But if they will have Implication, what fo ftrong for a Fee, as Charges of " Debts and Legacies," &c. This Implication of a Fee is confiftent both with Law and Equity— theirs directly againft both. " A. devifes his Brother, " Lands &c., and *all his Perfonal Eftate,* defiring him " to pay his *Debts and Legacies,* — *a Fee paffes.*" 2 Vernon,

non, 687, *Ackland* vs. *Ackland*. 3 Cro. 58. 2 Strange, 1175, *Barker* vs. *Suretees*. Thus there was not even an implied Tail in the three Brothers; next there were no Crofs Remainders: The Gentlemen can't find I believe, if they examine all the Books from William the Conqueror down to this Time, where there are Crofs Remainders by Implication, without an exprefs Tail. There are no Crofs Remainders between 3 Brothers to be found in any of the Books, not even that of Dyer, 303. That was nothing but *Talk*. (Mr. O. here expatiates on the aforecited Paffages of Viner.) But taking this Cafe of Dyer to have been adjudged (which is far from being certain), " It *feem'd* to the Court," &c.

Mr. *Gridley*. *Videbatur* was always ufed by the Roman Judges, and is often in the Books.

Mr. *Otis*. Let it be fo: It is well known there are *obiter* Opinions, which are properly enough exprefled by " It *feems*," yet are not to be relied on as Law. An *obiter* Opinion, I take it, is about a Medium between what the firft Council in England fay *arguendo*, and the folemn Judgments of the Court, after a full Hearing the Council. The Cafe of Dyer, 303, on which they bottom themfelves is totally different from the Cafe at Bar; excepting this Cafe of Dyer it is fettled that Crofs Remainders fhall not be among more than 2, and this Cafe being among 3, it falls to the Ground. 3 Leon. 115, *Brian* vs. *Cawsen*, as cited by Viner, Tit. Rem. X. p. 5. 1 Leon. 166. *Gilbert* vs. *Witty*, Cro. James, 655. Roll. Abr. 835. Viner, Tit. Devife, Let. K. 4 Mod. 282. Cro. Jam. 590, *Pells* vs. *Brown*. (Thefe
Authorities

Authorities cited by Mr. O. to fhew the Brothers
took by Executory Devife.)

I fhall now fhow, if all the foregoing Points were
againft us, yet the Collateral Warranty binds the
Iffue, and therefore the prefent Demandant muft
fail; but before I enter on this, the Deeds muft be
looked into, and your Honours will there fee how
the feveral Warranties defcend.   It is incumbent
upon me to fhew that Collateral Warranty is a Bar,
without Affetts, notwithftanding the Statute of
Ann.   10 Rep. 95 b, *Edward Seymour's Cafe.*
Lineal Warranty bars with Affetts, Collateral War-
ranty without; it may appear hard, but if the Rea-
fon is attended to, it will be cleared; it is for the
Safety of Men's Eftates, and that People fhould not
be defrauded of what they *bonâ fide* bought, many
Years after Purchafe.   And there are other Artificial
Reafons, as no Man is prefumed to difinherit his
own Blood without leaving him greater Advance-
ment, &c.   1 Inft. 373 a, b, 375 b, 376 a, &c.
Viner, Tit. Voucher, U. b. 2, to U. b. 6.   *Holt,*
*Ch. J.*, faid, "That the true Reafon of Collateral
"Warranty was the Security of Purchafers, and for
"their Encouragement; as alfo for the eftablifhing
"and fettling of fuch as were in by Title or Defcent
"caft, and this was the only Security fuch Perfons
"could have at Common Law; and becaufe the
"Eftates of fuch Perfons as are in by Title, are
"much favoured in Law, thefe Covenants that were
"for ftrengthening them were favoured likewife."
Same Tit. U. b. 5.   12 Mod. 512.   The Collat-
eral Warranties which are made void againft the
Heir are thofe made by any Anceftor who has *no*
                                              *Eftate*

*Eſtate of Inheritance in Poſſeſſion of the Lands.* 4 & 5 Ann, ch. 16.   Now, according to their own Suppo-fition and the Special Verdict, the Anceſtor making this Collateral Warranty had an Eſtate of Inherit-ance in Poſſeſſion, and therefore does not come within this Statute; but I deny the Statute of Ann to extend here.

The Common Law and Policy of England have been, this 4 or 500 Years, tired of theſe intailed Eſtates; and therefore every legal Method has been profecuted for their Suppreſſion.   Many have been the ill Effects felt both by State and Individuals, in Conveyance of theſe Eſtates; therefore ſo far from being favoured they have ever been difcountenanced; and ſurely never was ſuch an Eſtate as is here con-tended for, favoured — big with the greateſt Confu-ſion and Injuſtice— inconſiſtent both with Law and Common Senſe.   I therefore ſubmit it to your Honours' Judgment, not doubting that Judgment will be rendered according to Law.

*Mr. Gridley.*   " *After my juſt Debts, &c., I give all,*" *&c.*   "*If either,*" &c., " *to the ſurviving Sons or Son.*" The Queſtion is, whether there was a Tenancy in Common in Fee, with an Executory Deviſe over, or a Tail with Crofs Remainders: On the other Side they ſay, the firſt Words are Fee, and the after Clauſe, " *If either die without Iſſue,*" makes an Ex-ecutory Deviſe over :  We ſay, if there were no more Words, a Fee, but the after Words make a Tail, and the laſt, Crofs Remainders.   When we read a Will, we aim at the Deviſor's Intent; we aim at the gen-eral governing Idea of the Teſtator's Mind.   If we

enter

enter into the Will, you will find, that the grand and fole Object of the Devifor was the Emolument of his Pofterity, and the Perpetuity of his Eftate in his Family. Let us fee, if we can't make fuch a System of Eftate as will be confiftent with the Law, and enforce the Teftator's Intent; if it is poffible it fhall be done : But thefe Crofs Remainders between 3 frighten the Gentlemen; no fuch Thing in the Books ; no fuch Crofs Remainders by Implication: We will fee. The firft Words, " *All, &c.*" a Fee, the Words laft, a Tail—as for "*Heirs,*" the other Words fhew what he means. " *Heirs lawfully begotten in Wedlock.*" The Gentlemen talk of Implication upon Implication, and Implication upon that again; the Words by which the Tail is made are implied, but a neceffary Implication. Heirs in general make a Fee, but he fhews what Heirs he intended ; "*If either die, then to the furviving Sons or Son,*" this makes the Crofs Remainders. The Sons Thomas, Samuel and John took Tails with Crofs Remainders over, each upon the other: Upon John's Death, Thomas and Samuel were jointly feized of John's Part; upon Thomas' dying, Samuel and Thomas' Iffue were feized together ; and upon Samuel's Death, the Whole remained to the Father of the prefent Demandant. This was the Intent of the Teftator, that the Brothers took Tails with Remainders, one upon the other. It is the Bufinefs of the Law to explain the Pregnancy of Expreffion, and when this Pregnancy is drawn out, this is the mighty Confufion, this is the terrible Bugbear. The Lawyers who talk of the Abhorrence of the Law, the Confufion, the Awkwardnefs, and I don't know what all, of Crofs Remainders,

were

were afleep, I believe, and had their Heads muffled up in Napkins.

*Mr. Auchmuty*.   I don't underftand fuch Reflections.

*Mr. Gridley*.   I meant no Reflection on you, Sir.

*Mr. Otis*.   Mr. Auchmuty, I did not take Mr. Gridley intended to reflect upon us, but on all the Judges of England.

*Mr. Gridley*.   What mighty Difficulty to former People I can't tell; 'tis very plain now.   Crofs Remainders may be among 2; why not 3 ?   If John dies, then to Thomas and Samuel; if Thomas dies, then to Samuel; each have·a Tail with a Remainder expectant upon the Death of the others dying without Iffue.   A Fee can't be limited upon a Fee — they ftrived hard for it in the Cafe of Devifes, but then it was only for Years.   "All the Candles burning at once," as one of the Judges * expreffed it.   *Chadock* vs. *Cowley*, Cro. Jam. 695.   Dyer, 303. Here is one Acre to A. and the Heirs Male of his Body, another to B. and another to C. in like Manner.   "And if they all die without Iffue of their or "any of their Bodies or either of them," Remainder over; here are Crofs Remainders among all the 3 Sons.   Dyer, 303.   The Darknefs is here diffipated from Crofs Remainders, the Words, dying "without

* *Twifden.*

without Iſſue " are directly againſt Executory De-
viſes.*

Mr. Auchmuty has endeavour'd from ſeveral
Charges to prove it a Fee. The Manner of Con-
ſtruction in Law is, *reddendo Singula Singulis;* every
Thing muſt be rendered according to its Nature.
An ample perſonal Eſtate was left — real ſhall
never be taken in ſuch Caſe. The Charge was
perſonal, and not upon the Land : Beſides, it does
not appear that there was no perſonal Eſtate left;
the Special Verdict ought to have ſet forth, there
was no perſonal Eſtate left; this is not done, ſo
that's at an End.†

It has been ſaid, Deviſor deſigned Equality — he
did do Equality — all had Tails; the Event as to
the Remainders was left to Chance.

I won't produce 20 Authorities where 1 is necef-
ſary; here have been numerous Authorities cited,
to what Purpoſe I know not, unleſs *Show.*

*Mr. Otis.* You muſt allow Children a little
Oſtentation.

*Mr. Gridley.* I won't ſay the Caſe of *Gilbert &
Witty* is not Law, but I will produce Jones to ſhow
wherein

---

\* It is ſaid (in Carth. 310) that " It is a certain Rule that a Will
ſhall never operate by Way of Executory Deviſe, if it may take Effect
by Way of Remainder." *Qu.* if this Authority would have been im-
pertinent.

† *Qu.* if perſonal Eſtate is not found in the Verdict, whether it is to
be preſumed. Vid. 3 Mod. 45, 46.

wherein it is wrong; Dodridge was certainly wrong, when he faid, no Crofs Remainders among 3. 7 Edward 6 (Year Book). Dodridge ought to have read this before he pronounced. It appears by this Book* that Dodridge was wrong, on whom the Gentlemen fo much rely: 'Tis true I have not produced the Year Book, but I have produced Hobart, whom I can truft, for he was an Oracle of the Law. 2 Jones, 172, *Holmes* vs. *Meynill.* Pemberton too is with us, one of the Miracles of Mankind; he was not afraid of the Reveries of Sick Men; was not afraid of plaguing his Mind in finding out the Meaning of difeafed Minds: He ufed the Affiduity becoming a Judge to get the Devifor's Intent, and when he had found it, he had it fulfilled. 'Tis not the Part of Judges to ftifle, but to enforce the Devifor's Intent; you had Crofs Remainders among 3 at the Common Law, and Dyer, 303, has carried them as far as 4. Mr. Otis fays there was no Judgment in this Cafe. Dyer feldom ufes more than "*it feems;*" this Mr. Otis knew: It is very ftrange Dodridge fhould fay, no Crofs Remainders between 3, when here is 4, and I have fhewn the Year Book; Dyer full with us, the greateft Judge that ever fat in the King's Bench, — as great in Law as Sir Ifaac Newton in Mathematicks and Philofophy. Pollexfen, 413. So, taking thefe Authorities, we have 5 Judges againft 3, Dodridge and other obfcure Names.† Skinner Rep. 17. Ld. Raym'd, *Meynill's Cafe.* I have looked over all their Authorities,

---

* Hob. Rep. 34. " A Devife to 3 Brothers in Tail, and that one shall be Heir to the other, this makes Crofs Remainders." Hob. 34.

† Holt and Powell.

ities, and thefe few I have felected as to the Point, and have obferved on them what is neceffary.

The Intent of the Teftator is the *only* Rule, the *only* Director, whether that Intent is got by Implication or otherwife: His Intent can't be fulfilled without Crofs Remainders, and if Crofs Remainders are good among 2, certainly among 3; they have been carried to 3, and even to 4 according to the Authorities cited; therefore as his Intent is with us, and the Law is with us, your Honours will give Judgment accordingly.

N. B. Mr. Gridley made an Excufe for not fpeaking to the Collateral Warranty, as it was a Point he did not think would be ftarted, and therefore begged time to look into the Books. This Requeft was granted.

Afterwards Mr. Gridley fpoke to this Point, of Collateral Warranty, and, as I heard, fo conclufively that the Council for the Tenants waived the Matter.*

———◆———

The Court defiring that a brief State of the Cafe, *Banifter* vs. *Henderfon* might be given in by the Council on both Sides, the following States were delivered to the Court.

The

* *Sed quære*, and fee Dr. Sullivan's Lect. on the Laws of England, 182, 3, and *qu.* if yᵉ Act of Parliament extends, or is binding here.

*Qu.* If 2 Strange, 969, 996, might not with Propriety have been produced in Favour of the Tenants. Vid. *Stephen* v. *Stephen*, Chan. Cafes, 168, 169, &c.; 1 Ld. Raym'd, 208. Vid. 2 Wilfon's Rep. 88 b. *Driver* v. *Standring*.

1765.

BANISTER
*v.*
HENDERSON.

The State of the Cafe by the Council for the Tenant.

*Banifter's Cáfe.*

Whatever Eftate the Devifees took, was by Implication — not by exprefs Devife.

Implication muft be neceffary, and not barely poffible. 2 Bac. 66 (G). 6 Co. 17. Cro. Car. 368.

Intent to be collected from the whole Will — therefore the Devifes to the Grandfon and the Daughter, as well as joining real and perfonal Eftate muft be confidered. Alfo the Words in Remainder in the Claufe now in Difpute.

From all which it appears, the Teftator never meant to Entail; the Diftinction between the Devife of the Pew and the Reft of the Eftate proves the fame Point.

The Remainder being an Exprefs Eftate in Fee, argues that the firft Eftate was alfo intended in Fee.

The Teftator meant to convey an equal Tenancy in Common, in Fee, determinable on either's dying without Iffue in the Life of fome other Son, and an Executory Devife over, of fuch Deceafed's Share to the Survivor or Survivors.

The Eftate being fubjected to the Payment of Debts and Legacies, is equal to being fubject to Payment

Payment of certain Sums; and the Eftate being
implied makes a Fee Simple.   2 Vern. 687.   1
Lill. 451, 452.   3 Co. 19, *Borafton's Cafe*.   1 Cas.
Abr. Equ. 176, 9, 10, 12.

1765.

BANISTER
*v.*
HENDERSON.

But if doubtfull, then Judgment muft be for us,
in Law and Equity; Law, that the Demandant
clearly prove his Writ, and Cro. Eliz. 743 — what
Walmfley faid; Equity — fairly purchafed, long
poffeffed, the Purchafe Money ufed to fupport the
Family.

To prove it no Tail, 3 Mod. 104; 3 Cro. 57; 2
Strange, 1172.

Granting for Argument Sake, that the firft Words
create an Eftate Tail by Implication, yet the Re-
mainders not crofs.   Hob. 34.   Vin. Tit. Devife,
X. pl. 1, and Notes.   Vin. Remainder, *per tot*; 2
Cro. 655.   2 Show. 139.   8 Mod. 260.

When John died, Tom. and Sam., expreffly by
the Devife over, became Jointenants in Fee of
his Part; and on Tom.'s Death, all his Part of
John's Third that was undifpofed went to Sam., by
Survivorfhip, and never can go back as a Remain-
der to the Heirs of Tom.

If Jointenants in Fee, there cannot be Crofs Re-
mainders of that joint Eftate, for that would be
limiting a Fee on a Fee at Large.

The Collateral Warranty binds.   1 Inft. §§ 709,
716.   1 Co. 63.   10 Co. 97.   Vin. Tit. Voucher,
U.

U. b. pl. 5, U. b. 6, pl. 1 & 2, & Notes. W. b. pl. 5. W. b. 4. Notes on pl. 2. U. b. 3, pl. 25, & Notes. Voucher, X. a. 2, pl. 5, U. b. 3, pl. 3. C. b. pl. 3, & Notes.

What is the Diſtinction between a Collateral and Lineal Warranty is proved by 1 Inſt. §§ 704, 705, & 717.

——

By the Council for the Demandant.

*Caſe of Baniſter* vs. *Henderſon.*

Mr. Thomas Baniſter by his laſt Will deviſed (among other Things) £500 to his Daughter Mary Baniſter; but if ſhe did not live to have Iſſue, then to be paid to his three Sons to be equally divided amongſt them, as he had willed the Reſt of his Eſtate to be divided among them, or the Survivors of them.

*Item.* He gave all his Houſes, Lands, Mortgages, Bills, Bonds, Money, Plate, Debts, Merchandizes, both at Sea and Land; as alſo all Books, Bedding, Houſehold Stuff, Horſes, Cattle, *and all that of Right any ways belonged or appertained to him whether named or not named* to his three Sons Thomas, Samuel, and John; to be equally divided amongſt them; and if either of his three Sons die without Heirs lawfully begotten in Wedlock, he willed their Share to the ſurviving Sons or Son, and their Heirs forever.

By this Deviſe the three Sons took an Eſtate in Common

Common in Tail general in the Lands &c. devifed, with Crofs Remainders in Tail among them of each other's Shares.

*Firft.* By the Devife of all his Houfes and Lands &c., and all that of Right anyways belonged to him, whether named or not named, a Fee would have paffed to his three Sons by Force of the Words taken by themfelves. Vid. 1 Salk. 239, *Hopewell* vs. *Ackland*, where Alleyn, 28, *Wheeler's Cafe*, and 2 Vent. 285, *Willow's Cafe*, are rely'd on; for the Words are as ftrong and comprehenfive as thofe made Ufe of in thofe Cafes, and muft comprehend all his Eftate, which alone would pafs a Fee; and as by Devife of all his Lands an Eftate for Life paffed, the following Words, unlefs they comprehend his Eftate in thofe Lands, muft be ufelefs.

*Secondly.* The following Words, " equally to be divided among them," make them Tenants in Common of the Whole. Vid. 1 Salk. 226, *Bliffet* vs. *Cranwell.*

*Thirdly.* By the fubfequent Words — if either of his three Sons die without Heirs lawfully begotten in Wedlock, he wills their Share to the furviving Sons or Son, and to their Heirs forever — an Eftate Tail general is created of their feveral Shares; for this fhews the Intent of the Teftator to be Heirs of their Bodies, by neceffary Implication; fo that Heirs here fignifies the fame as Iffue; for they could not die without Heirs, living their Brother. Vid. Cro. James, 415, 416, *Webb* vs.
*Hearing.*

1765.

BANISTER
*v.*
HENDERSON.

*Hearing.* Same, 448, *King* vs. *Rumball.** 3 Lev. 70, *Parker* vs. *Thacker.* 1 Salk. 233, *Nottingham* vs. *Jennings.* Cro. James, 695, *Chadock* vs. *Cowley.*

*Fourthly.* By these Words — if either of his three Sons die without Heirs lawfully begotten in Wedlock, he willed their Share to surviving Sons or Son, and their Heirs forever — Cross Remainders in Tail are created among them of their several Shares; for the Words "if either of them," &c. make Cross Remainders, exprefs, and differs the Cafe from that of *Gilbert & Witty.* In 1 Vent. 224, *Cole* vs. *Levingston, per Hale, C. J.* Vid. also Dyer, 303. Cross Remainders exprefs among four, exactly agreeing with the present Cafe. 2 Jones, 172, *Holmes* vs. *Meynill,* a Cross Remainder by Implication — whereas this exprefs, and confequently a much stronger Cafe.

In both the faid Cafes the Cross Remainders vested in Tail, as well as the first Estate of each in their several Shares; and by the fame Reason and Law, they shall vest in Tail in the present Cafe; so that the Estate shall not revert till all the Sons are dead without Issue, and the whole Estate Tail entirely spent. And this is corroborated by the Limitation to the surviving *Son* as well as Sons, which plainly shows the Intent of the Testator was, that all these Remainders to each of the Sons, of the other's Shares, should vest in Tail immediately by the Devise; and this is perfectly agreeable to the Resolution

in

* By the first and last Cafes in Cro. James, it appears it was not a Contingent Estate, but took Place immediately by the Devise.

in the above Cafes, particularly that in Dyer, which correfponds exactly to it, and is full in Point; and this Conftruction renders the whole Devife in every Part of it perfectly confiftent and agreeable to the evident Defign and Intention of the Teftator.

1765.
BANISTER
v.
HENDERSON.

Upon the Whole, the Devife then as was obferved at firft will ftand thus: To Thomas, Samuel and John, in Common in Tail general, with Crofs Remainders in Tail to each of the others' Shares; fo that when John died firft without Iffue, his Eftate was entirely fpent, and the Remainder of his Share came equally to Thomas and Samuel in Tail; when Thomas died leaving Iffue, his Moiety defcended to the Heirs of his Body in Tail, and alfo the Remainder in Tail of John's Moiety, which was vefted in Thomas, defcended upon the Death of Thomas to the Heirs of his Body in Tail; fo that when Samuel died without Iffue, his Moiety alfo came to the Iffue of Thomas in Tail; and no Part of the faid Eftate so devifed can revert to the Heirs of the Devifor till all the Iffue of the Body of Thomas is entirely fpent.

———◆———

(*Another State of Banifter's Cafe which I received from Chief Juftice Hutchinfon, together with the foregoing State of that Cafe, by the Demandant's Council.*)

*Cafe of Banifter* vs. *Henderfon.*

The Teftator devifes all his Houfes, Lands, &c., *and all that of Right anyways belonged or appertained to him, whether named or not named,* to his three Sons
Thomas,

Thomas, Samuel and John, to be equally divided among them; and if either of his three Sons die without Heirs lawfully begotten in Wedlock, he willed their Share to the furviving Sons *or Son*, and their Heirs forever.

It was argued for the Defendant, that this was an Executory Devife, &c.

In Anfwer to which, it was urged for the Plaintiff, that it is a fettled and certain Rule of Law, that a Will fhall never operate by Way of Executory Devife, if it might take Effect by Way of Remainder, viz., if there is a particular Eftate fufficient to fupport it. Vid. Carthew, 310, in the Cafe of *Reeve* vs. *Long*; 2 Saund. 380, *Purefoy* vs. *Rogers*, at the latter End of the Cafe; 2 Bacon, 72, where thefe and feveral other Cafes are cited.

By this Devife (as we fhall fhew clearly) an Eftate Tail was created in the three Sons, of their feveral Shares; which is a particular Eftate fufficient to fupport a Remainder; and therefore by the Rule, the Limitation fhall take Effect by Way of Remainder, and cannot be conftrued an Executory Devife.

It is infifted for the Plaintiff, that, by this Devife, the three Sons took an Eftate in Common in Tail general in the Lands devifed, with Crofs Remainders in Tail among them of each other's Shares.

To fhew this, they obferve —

*Firft.* By Devife of all his Land, and all that of
Right

Right anyways belonged to him, &c., a Fee would have paffed to the three Sons, by Force of thefe Words taken by themfelves; for this they rely on the Cafe of *Hopewell* vs. *Ackland*, 1 Salk. 239, where Alleyn, 28, *Wheeler's Cafe*, and 2 Vent. 235, *Willow's Cafe*, are rely'd on; for thefe Words are as full and ftrong as thofe made Ufe of in thefe Cafes, and muft comprehend all his Eftate.

*Secondly.* The following Words, "equally to be divided among them," make them Tenants in Common; for which Vid. 1 Salk. 226, *Bliffet* vs. *Cranwell.*

*Thirdly.* By the subfequent Words — if either of his three Sons die without Heirs lawfully begotten in Wedlock, he wills their Share to the furviving Sons *or Son*, and their Heirs for ever. By the firft Part of them, an Eftate in Tail general is created of their feveral Shares: For this fhows the Intent of the Teftator to be, Heirs of their Bodies; fo that Heirs here fignifies the fame as Iffue, for neither could die without Heirs in the general Senfe of the Word, living his Brothers. For this they rely on Cro. James, 415, 416, *Webb* vs. *Hearing*; Same, 448, *King* vs. *Rumball*; Same, 695, *Chaddock* vs. *Cowley*; 3 Lev. 70, *Parker* vs. *Thacker*; 1 Salk. 233, *Nottingham's Cafe.*

N. B. By the above Cafes of *Webb & Hearing*, and *Chaddock & Cowley*, and their Analogy to the prefent, it appears that this was not a contingent Eftate, but took Place and vefted immediately by the Devife.

*Fourthly.*

1765.

BANISTER
v.
HENDERSON.

*Fourthly*. By the fame Words, alfo (the latter Part of them), Crofs Remainders are created among the three Sons, of their feveral Shares. Thefe Words, " if either of them," &c., make Crofs Remainders exprefs, (1 Vent. 224, *Cole* vs. *Livingfton*) and is not by Implication, but as determinate as if Crofs Remainders had been drawn out at Length. And this differs the Cafe from that of *Gilbert & Witty*, produced on the other Side. Vid. also, Dyer 303, Crofs Remainders in Tail among 4, a Cafe in Point. Alfo 2 Jones, 172, *Holmes & Meynill*, where the Cafe of *Gilbert & Witty* is queftioned. Vid. Hobart, 34, which Cafe, and that in Dyer, muft have been overlooked by Juftice Dodridge. He faid, in *Gilbert & Witty*, that it would not be found in any Book that Crofs Remainders could be between three.

It appears, alfo, by the Limitation being to the furviving *Son* as well as Sons, that it was the Intent of the Teftator that the laft furviving Son, the other two dying without Iffue, fhould take the Whole. This could not take Effect by any Conftruction, but the above of Crofs Remainders in Tail executed; but upon this Conftruction, no Part of the Eftate could revert to the right Heirs of the Devifor, until all the Sons were dead without Iffue, and the whole Eftate Tail in each fpent, according to the above Cafe in Dyer.

Upon the Whole, therefore, the Devife ftands thus : To Thomas, Samuel and John in Common, in Tail general; and if Thomas die without Iffue, the Remainder of his Share to Samuel and John in Tail; and if Samuel dies without Iffue, the Remainder

mainder of his Share to Thomas and John in Tail; and if John dies without Iſſue, the Remainder of his Share to Thomas and Samuel in Tail.

So that when John died without Iſſue, his Share came to Thomas and Samuel in equal Moieties in Tail, with Croſs Remainders in Tail between them of each other's Shares; and when Thomas died leaving Iſſue, his Share, and his Moiety of John's Share, came to his Iſſue in Tail; and when Samuel died without Iſſue, his Share, and his Moiety of John's Share, came to the Iſſue of Thomas in Tail.

The laſt Words, " *then to the ſurviving Sons or Son, and their Heirs for ever,*" could not poſſibly make a Jointenancy in Fee, in Caſe of Death without Iſſue. The Survivor was to have the Whole, which might have been prevented by ſevering the Jointenancy; so that, to anſwer the Teſtator's Intent, a Remainder in Tail veſted in Thomas upon Samuel's Eſtate in Tail in this Moiety; and so *vice versa*, and upon Samuel's Death, this Remainder came veſted in Poſſeſſion.

---

Judgment was afterwards rendered at Worceſter Court for the Tenants: By the Opinion of *Lynde*, *Cuſhing* & *Ruſſell*: Chief *Juſtice* & *Oliver* full in Favour of the Demandant.* (9)

* *Qu.* if 2 Black. Comment. ch. 20, pp. 302, 303, and ch. 23, pp. 381, 382, would have been impertinent in this Caſe.

---

(9) It is to be regretted that we have no means of aſcertaining concluſively on what grounds this deciſion was given. The three points raiſed are briefly as follows : 1. Whether the words of the will created
an

an estate tail, or a fee with executory devises; 2. If an estate tail, whether cross remainders can be created by implication among more than two; 3. Whether collateral warranty will not bind the issue. Quincy states that the last point was given up by the tenant's counsel; and although it was inserted in his "state of the case," yet its not being mentioned in the others, would seem to show that it was, in effect, abandoned. As to the second point, it is true that most of the authorities at that day leaned strongly against the establishment of cross remainders among more than two. See 3 Bl. Com. 381, 2, cited by Quincy *supra*. But upon this ground alone, it is difficult to see why the demandant should not have had judgment for one third of the premises. And it was soon after established that cross remainders might arise among any number. Cowp. 780. 2 East, 36. *Hall* v. *Priest*, 6 Gray, 18, in which last case they were established among eight. From these considerations, it seems to us more probable that the decision was given upon the first point; and we have, accordingly, so stated it in the marginal note.

But whether the point of collateral warranty was not well taken, *quære*. That the reporter so considered it, appears from his note, *ante*, 145, and his citation, *supra*, of 3 Bl. Com. 303, where it is laid down that collateral warranty is still a bar, "notwithstanding the statute of Queen Anne, if made by tenant in tail in possession."

—————

Among the law papers of John Adams, for access to which we are indebted to the kindness of Hon. Charles Francis Adams, we find a copy of an opinion given in 1745, by the distinguished lawyer, John Read, upon a case which had arisen upon the same clause in the will, and in which some of the same questions were involved. That opinion is printed below. The case resulted in favor of the tenants; but it will be seen that Mr. Read's opinion coincided with that of the minority of the Court in *Banister* v. *Henderson*, viz., that the devise created an estate tail with cross remainders. It appears, also, that the point was raised which was afterwards decided in *Baker* v. *Mattocks* (*ante*, p. 69), viz., the partibility of estates tail; and that the opinion of Mr. Read, and also, it would seem, of Mr. Pratt (afterwards Chief Justice of New York), was in favor of the partibility, coinciding with that of the minority of the Court in *Baker* v. *Mattocks*, and with that of Judge Trowbridge. See *ante*, p. 74, note.

"*Mr. Banister's Case* v. *Nat. Cunningham.*

1692. The Province Law, p. 3, enacteth that any Man Seized in Fee Simple of Land in this Province may dispose of it at Pleasure by Deed or Will; or it shall be Subject to a Division with his Personal Estate, viz‡, a double Portion to his eldest Son, and equal Shares to the Rest of his Children.

1708. Mr. Thomas Banister devised, among other Things, £500 to his Daughter, Mary Banister, but if she did not live to have Issue, then

then to be paid to his 3 Sons, to be equally divided among them, as he had willed the Reft of his Eftate to be divided among them or the Survivor of them."

*Item.* He gave all his Houfes, Ware-houfes, Lands, Mortgages, Bills, Bonds, Money, Plate, Debts, Wares, Merchandizes, both at Sea and Land, as alfo all Books, Bedding, Houfehold Stuff, Horfes, Cattle, *and all that of Right any ways belonged or appertained to him, whether named or not named, to his Three Sons, Thomas, Samuel and John, to be equally divided among them ; and if Either of his Three Sons dye without Heirs lawfully begotten in Wedlock, he willed their Share to the Surviving Sons or Son, and their Heirs for ever.*

The Teftator died; then his Son John died without Iffue ; then Thomas leaving Iffue, whereof the Eldeft Son is fince deceafed without Iffue ; but there are now living John, Samuel Annefley, and Frances Wife of Wm. Bowen. The Teftator's Son Samuel, furviving his two Brothers, mortgaged 7 Acres of Pafture in Boston, Part of the Eftate devifed them, to Nathaniel Cunningham, and his Heirs, by Force whereof he entered and held it, and then the Mortgagor died without Iffue.

Q. Is Nath'l Cunningham's Eftate in this Pafture good, or not ?

A. His Eftate is void, for the Mortgagor had but one Half, and that in Tail, by the Devife above. —

For the Devife above, giving all that of Right any ways belonged to the Teftator, gave every Parcell of his Eftate, and all the Right he had therein, and is as large as the Expreffion in the Cafe of *Hopewell* vs. *Ackland,* 1 Salk. 239, viz^t., " and whatfoever elfe I have not before difpofed of ; " and therefore would by itfelf pass a Fee Simple to the Three Sons.

And thefe Words added, " to be equally divided among them," would make them Tenants in Common of the Whole. 1 Salk. 226, *Bliffet* vs. *Cranwell.* But by farther devifing the Remainder to the Survivor, if either of his Three Sons dye without Heirs lawfully begotten in Wedlock, the Teftator createth an Entail of their feveral Shares. 1 Salk. 233, *Nottingham* vs. *Jennings.* Devife to his fecond Son to hold to him and his Heirs for ever, and for Want of fuch Heirs, then to his own Right Heirs — adjudged an Eftate Tail ; and the Word Heirs can import nothing more than Iffue, for he could not die without Heirs, living Heirs of the Father.

Laftly, by devifing the Share of fuch as dye without Heirs lawfully begotten in Wedlock, to the furviving Sons or Son, and their Heirs for ever, makes Crofs Remainders among them. So that when John died firft without Iffue, the Remainder of his Share came equally to Thomas and Samuel in Tail ; when Thomas died leaving Iffue, his Moiety defcended to the Heirs of his Body in Tail ; and when Samuel died
without

without Iffue, his Moiety came to the Heirs of the Body of Thomas in Tail. 2 Jones, 172, Holmes vs. Meynell, on Crofs Remainders by Implication, where Croke, James, 655, *Gilbert & Witty*, is queftioned. See Dyer, 303, Devife. Crofs Remainders exprefs among 3, as this Cafe is. And Mr. Samuel Banifter's furviving both his Brethren doth not change his Eftate, which was an Entail immediate by the Will, Remainder to Thomas and John, and the Heirs of their Bodies. Cro. James, 695, *Chadock* vs. *Cowley.* Therefore by Samuel's Death without Iffue, his Eftate is determined; by the Death of John without Iffue, and of Thomas leaving Iffue, the Right to this Remainder, by Force of the Gift vefteth in Thomas's Iffue in Tail, the Reverfion to the Right Heirs of the Donor.

Wherefore the Heirs of y⁰ Body of Thomas fhall demand and recover the Pafture of Mr. Cunningham by Force of the Devife aforefaid.

Q. 2. To whom doth this Pafture fall, — to John the eldeft Son furviving, or to the four Children of Thomas equally ?

A. This Pafture defcends to all his Children equally as Coparceners by the Prov. Law, and they muft join in Suit.

The Teftator was Seized of this Pafture as of an Inheritance defcendible to all his Children as Coparceners as above, and therefore by giving it in Tail to his Sons and the Heirs of their Bodies, he could not alter y⁰ Defcent, and make that defcendible to the Eldeft Son only, which was by Law defcendible to all y⁰ Children ; for —

1. The fulleft Words of Limitation to make an Intail, as in a Gift to A. and his Heirs of his Body begotten, have no Tendency to alter the Courfe of Defcent, but only to limit whofe Iffue fhall inherit, and so how long the Inheritance fhall endure ; and when that Iffue is fpent, the Eftate reverts to the Donor. Lit. Ten. § 18, 19.

2. The Stat. of Weft. 2, c. 1, makes no Intail but of fuch Eftates as were Fee Simple Conditional at Common Law, and confirms them according to the Will of the Donor, but makes no Alteration of the Courfe of Defcent. Co. Lit. 18, 19. Therefore Lands of Inheritance, whether intailed or not, always defcended to the fame Heirs. So Lands in Burrough Englifh to the youngeft Son. Co. Lit. 110, b. Lands in Gavelkind to all the Sons. Co. Lit. 175, &c.

3. If the Donor, intending by exprefs Words to alter the Courfe of Defcents, gives Lands to a Man and his eldeft Heirs females of his Body, or Lands holden in Gavelkind, to a Man and his eldeft Heirs, he cannot thereby alter the Law ; the Word Eldeft fhall be rejected, and all the Parceners fhall inherit. Co. Lit. 27, § 31.

By y⁰ fame Reafon and Law, this Pafture, defcendible to all his Children as Parceners in Fee Simple by the Prov. Law, now intailed defcends to all the Children, and they muft bring the Action.

Bofton, December 19, 1745.                    *John Read.*

Or

Or say,—

1. The Nature of an Intail confifts in limiting what Iffue fhall inherit, and how long the Inheritance shall endure, before the Donor or his Heirs may enter as in their Reverfion. Lit. Ten. § 18.

2. The Stat. of *Donis conditionalibus* creates no Eftate Tail but of fuch an Eftate as was Fee Simple at the Common Law, and is defcendible in fuch Form as it was at the Common Law. Co. Lit. 19, *Devant le dit Statute*, &c. — the penultimate Sentence of the fecond Paragraph. Therefore Lands of Inheritance, whether intailed or not, always defcend to yᵉ Same Heirs in Either Cafe, Lands in Burrough Englifh to the youngeft Son. Co. Lit. § 165. *Toutes les Terres ou Tenements.* Lands in Gavelkind to all the Sons. Co. Lit. § 265.

N. B. This laft was, I think, in Mr. Pratt's Handwriting.